Case number 18-1081 et al. INEOS USA LLC Petitioner v. Federal Energy Regulatory Commission et al. Mr. Phillips for the petitioner, Mr. Kennedy for the respondent. Good morning. Good morning, your honors. May it please the court. INEOS is here today asking this court to instruct the commission to do its statutory duty. Section 3.1 of the ICA makes it unlawful for a common carrier to subject any person or company to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. The commission's refusal to exercise jurisdiction here to consider INEOS' complaints that this separation of these two pipeline systems is nothing but a sham denies INEOS of this statutory protection. Actually, he has not filed a complaint, has he? We have not filed a complaint, but we did file a protest of the tariff, which is the instrument in which they're trying to separate these two pipelines. No, I understand, but I didn't want you to think that we thought that a section 13 complaint had been filed by your client. And I didn't mean to cause any confusion on that, your honor. I apologize. I know the court has asked the parties to brief questions related to the motion to dismiss these cases for lack of jurisdiction in this court, so I'm happy to talk about that for a moment and then to talk about the commission's jurisdiction. On this court's jurisdiction, one of the primary problems we have here is confusion created by the commission itself. The first order issued in this case in July of 2017 was an order issued by staff under a delegation order because there was a lack of a quorum at the time. That order was specifically subject to further order from the commission. INEOS moved for rehearing, and that further order was issued in January 2018. And that order had two things in it that caused the confusion. That order both accepted, and didn't say that it did so in the past, but specifically the commission said we accept in the present tense the tariffs, and also denied the motion for rehearing, which put INEOS in a difficult position. We didn't know whether we should then go ahead and file a petition in this court on the denial for rehearing or whether we needed to go ahead and file a rehearing motion because of the further order from the commission. So we did the best we could, and we did both. We filed a petition for review related to the denial of rehearing, which was docketed in this case as number 1081, and then we sought rehearing. And then that rehearing motion was ultimately denied. Now the commission is in this court saying that our first petition was irrevocably and uncurably too early, and that our second petition filed after they denied our rehearing motion from the further order is too late. The commission would like to have it both ways. One of the things that makes that particularly difficult here is that this is the opposite of what the commission did in the PJM case, which is cited in our briefing at page 35. In that case, the commission did a similar thing. There were three orders. There was an initial order by staff. There was a further order by the commission itself that purported to both do further things and also to deny rehearing, and on the further motion for rehearing, the commission recognized that the rehearing motion was proper in that case, which is the opposite of what they did here. So we'd ask that the court find that there is jurisdiction on both of the 1081 and the 1200 cause number, because otherwise it would be inequitable to reach the result the commission asked this court to reach, and I think even the commission acknowledges that in their response. They also acknowledge that the January further order constructively reached a different result from the July order, and therefore I think they don't come out to say this, but I think from that you would have to conclude that the rehearing did lie from the January further order, which would make both of the petitions timely. Go ahead. Are you going to discuss the two cases, the two key cases on which the commission principally relies in filing a motion to dismiss? On the actual jurisdiction, referring to the Exxon case. I'm referring to the Supreme Court. Your Honor, I apologize, but I'm blanking on specific cases. Southern Railway and Resolute Natural Resources? Yes. I believe those are the ones that Judge Rogers is referring to. So referring then to the question of whether the commission, whether this court has jurisdiction because the commission simply declined to investigate, is that what the court is asking me to discuss? Okay. The problem here, though, is that the commission in our case didn't even get to that question. In deciding that the commission didn't have jurisdiction at all to decide these issues, the commission didn't get to the point that it got to in the other cases where they declined to exercise or declined to hold a hearing. Here we are one step ahead of that. You don't deny that the commission accepted these tariffs but declined to investigate. They declined to investigate because they found that they lacked jurisdiction to do so. As to part. But let's stick with the first. They accepted the tariffs but declined to conduct an investigation. Period. That is what they did, yes, Your Honor. So deal with Southern Railway and Resolute. The problem is that in order to reach the conclusion that they would not investigate because they said they didn't have jurisdiction, they assumed the answer to our question. No, they haven't. According to the Supreme Court and this court, the commission has discretion as to when it's going to investigate, if it's going to investigate, how it's going to investigate. What the commission here said they did, though, was that they said they lacked jurisdiction to even get to that point. As to one matter. And that matter, Your Honor, respectfully, is the key matter. Because if we're correct that they should investigate, that they do have jurisdiction to determine whether this is a complete abandonment or an incomplete abandonment, then they have jurisdiction to consider the rest of it. They have to start with that question. Yes. Because that question underlies everything else. Because if it's an incomplete abandonment, if the corporate veil should be pierced because they are using this separation as a sham, then they should further investigate. I think the problem is their decision to say that they don't have jurisdiction or their decision to say they don't want to investigate is premised on their conclusion that they don't have jurisdiction because it's a conclusion. I'm sorry. The decision whether to investigate by the commission is unreviewable under Heckler v. Chaney. Do you agree with that? We agree with it. There's another line of cases which neither party has cited that says that if you have a decision that itself is unreviewable, that you, I'm going to quote this if I can find it. Yeah. That you cannot carve out of an unreviewable decision some reviewable legal action. So for you to say, well, the reason that they didn't investigate is because they thought they didn't have jurisdiction is to carve out of a nonreviewable action something you think is reviewable. And there are at least three or four cases, recent cases in this circuit saying you can't do that in a Heckler v. Chaney situation. The case that the most recent one, just for your information, is Crewe v. the Federal Election Commission's 892 Fed 3rd, 434, decided last year. So if I've stated the law of the circuit correctly, I don't know what your response would possibly be. I think my response would be that we're not trying to carve out in the way that the Court has described, but instead we're saying we don't even, the Commission didn't even get to that question. The Commission didn't exercise its discretion to decide not to investigate. The Commission first had this initial question of do we even have jurisdiction? And I think that's a completely different question. There's a reason that when we have jurisdiction questions before courts, they don't reach the merits. They don't affirm or reverse. They simply vacate and send it and dismiss. Because ‑‑ I understand your argument, but that's not what the Commission did. The Commission accepted the tariffs, all right, but declined to investigate. Period. In explaining what it had done, it said first, as to part of the issue that your client was raising, it lacked jurisdiction. And then it went on to address the other issue your client was raising. And if I may interrupt before you answer Judge Rogers' question, which is a good point, I want to remind you that Heckler v. Cheney, which is the leading case, you're familiar with that, in that case itself, the agency first said we don't have jurisdiction, and then went on to give a reason why, even if it did have jurisdiction, it wouldn't exercise it. So isn't that, I mean, that follows up from Judge Rogers' question, because that's pretty much the situation here. Two answers to that, I think. The first one is, again, I come back to the fact that their reasons why are premised on their incorrect conclusion that they don't have jurisdiction. And the second part of my answer is to the extent they purport to give any other reasons why, those reasons are flawed for the reasons explained in our brief. Well, the Commission cited a decision by this Court, did it not, in saying it lacked jurisdiction as to part? Yes. How do you distinguish that case? Because, again, our argument here is that this is not a complete abandonment. It's a sham transaction. They're saying that it's a complete abandonment, but if we're looking at the abandonment cases, both the ones they've cited from this Court and the Commission's own decisions, we, again, believe that the corporate bail needs to be pierced here. This is done for the purposes of advantaging their own affiliates and disadvantaging others. And it's not a situation of selling it completely to a third party. It's not a situation of there is no more traffic on this line. Well, the Commission did express the opinion that this was not a situation in which there was record evidence to show that the transfer of ownership was somehow designed to undercut the purposes of the statute. All right? Number one. And I didn't see anything that you put in or your client put in that showed that the Commission's finding was clearly erroneous. Secondly, the Commission has said, to the extent you have concerns, file, and I don't want to ask the Commission about this, but file a Section 13 complaint. And I'm still unclear why your client hasn't done that. As to the first part of that, there's really only two findings that they have in there related to their explanation or their finding that there's no reason to pierce the corporate bail. Our argument there, first, is there's no record evidence because we haven't had the chance to investigate it. That's the reason we asked the Commission to set it for a hearing and give us the chance to do that discovery, because we believe there are enough indicators, enough So, what are the red flags that you cited to the Commission? We have the timing of their, when they did this in respect to our request for interconnection. There's the fact that they are continuing to delay and deny us on that issue. Well, Leverett says it's investigating. For two and a half years. They asked us for additional information, and this isn't in the record, but they asked us for additional information. It's not in the record. You can't bring it to us as a reason to grant your petition, correct? Because we need to get that more information. You may need more, but the question is, did you put some basis for the Commission to think that our decision was not applicable? Yes. Again, because of the very close relationship that's going on here, this is not a situation of even putting it in a completely different part of the company. And we pointed out to the Commission, to this Court, the same person is President of MidAmerica and Vice President of Leverett. The same person signed it. But the Commission comes back and says, the rates haven't changed, the regulations haven't changed, nothing's changed except it's gone from one sub or affiliate to another. And it's perfectly legitimate for a business to do that absent some evidence as the Commission has suggested that this is a way to foil the purposes of the statute. Yes. And again, I think because of the close relationship of those entities, because of the timing, the close relationship in time to our interconnection request, the fact that the result of this is that essentially only affiliates of this company can now nominate destination and endpoints on the Leverett system. It's completely separate. There's no joint tariff that would allow someone to nominate a destination and origin pair on MAPL and on the new Leverett system for South Eddy. Those things all together we think are enough that at a minimum we should be allowed to investigate that further. And I want to go back to the idea of the... has declined at this time to investigate. By denying our request, the Commission denies our ability to do an investigation under the aegis of the Commission, to discover it, and to ask the Commission to rule on whether this was a proper tariff and a proper separation. That's the whole point. All we're asking for is for this Court to tell you. Do you know that a corporation can decide to shift the ownership of one part of its operation from one entity to another? As long as it's not for an improper purpose, which is the purpose of the statute. Yes, and the Commission said there was no evidence before it to find that this transfer of ownership was for the purposes of undercutting the purposes of the statute, because the rates remain the same, the regulations remain the same, everything remains the same, except a different name. And with respect, that actually brings up an interesting point, which is if everything remains the same, then it undercuts the Commission's first decision that it's a complete abandonment, and that it therefore doesn't have jurisdiction. I strongly understand how it can be a complete abandonment on the one hand, and everything is the same on the other hand. If everything's the same, then it's not an abandonment. The Commission has jurisdiction and should exercise it. So why is the complaint process not available to your client? I don't think we've ever said it's not available to us. The fact that we have an alternate remedy through the complaint process does not really answer the question of whether the Commission has jurisdiction over this process, and whether we should first get this resolved before we get to the complaint process, which is our point. We just want the Commission to exercise its jurisdiction. And the last point I want to make, and I think it's important, and I know I'm way over my time and I appreciate the Court's indulgence, but the fact that this Court just last Friday reminded the Commission that this Court insists on reasoned justification. And even to the extent that the Commission says, okay, we don't have jurisdiction, but if we do have jurisdiction, we're not going to exercise it, I would say that what's in these orders as their explanation for why they're not going to exercise it does not pass muster. We've explained in our brief, there's really only two things that they put in there as to why they say that they don't need to exercise their jurisdiction. The first is an assumption about whether the two systems are interconnected, which we say is an open issue we want investigated. And the second issue is something where they make a factual error, where they say that we've never been connected to the MAPL system, which is simply wrong. And I know in their brief they say what they really meant there was that we've never been connected to the new, to the SouthAid system, but that's not what they said in their actual order. And so I'd say to the extent that they have said they've made a decision not to explain that, and in a minimum the court needs to send it back and ask them to explain that. So we'd ask that this court instruct the commission to exercise jurisdiction, to investigate whether this is a proper tariff, and to at a minimum provide a reasoned explanation for its decisions. Thank you. Good morning. Good morning, Your Honors. Robert Kennedy on behalf of the commission. We believe there's a number of jurisdictional hurdles here, and I'll start with the one the court spent the most time on, Southern Railway and Resolute Natural Resources. This court and the Supreme Court has held that the commission's decision not to investigate under Section 15.7 is not subject to judicial review for a number of reasons. A, the language of the statute, and B, as the Supreme Court said in Southern is not a ruling on the lawfulness of the tariff at all. It's simply a decision that at this time the commission will not initiate an investigation. Section 13, as the court noted, is available to any petitioner if they want to allege a violation of the ICA, and the commission will respond to that, and Southern Railway makes clear that that decision in response to the Section 13 complaint is subject to judicial review. So hypothetically, let's suppose the commission says we're accepting the tariff for filing, but we are not going to conduct an investigation, and the first reason it is for that decision is we lack jurisdiction as to one of the actions here. Suppose, just hypothetically, that that is clearly erroneous, both as a matter of law and fact. At what point does someone in the petitioner's posture have an opportunity to challenge that decision? In that respect, I think they would have to bring a Section 13 complaint. That's the only way. I believe so. The Court in Resolute Natural Resources recognized another possible exception, and the question there is if what the commission did in accepting the tariffs and declining to initiate an investigation, if that's beyond their authority, then that could be subject to immediate judicial review. But going beyond that and getting into the reasons why the commission declined to investigate is not subject. So you're relying on the line of authority that Judge Randolph alluded to in his argument? Well, I think we're mainly relying on this Court's Exxon Mobil. No, I understand. But what I was just trying to understand, so I'm clear, that if there's a decision that the commission has made over which this Court has no jurisdiction, that's at the end of the matter as far as this Court is concerned at this time. But if, in making that decision, the commission offered a legally erroneous reason, that simply is not something that we have any jurisdiction to review at this time in this proceeding. The last bit being the key piece, at this time in this proceeding. If we were resolute, we were not suggesting that the Court would have jurisdiction in that situation. I just want to be clear. Not in the situation I believe you're describing, as if saying. And just to be clear, and I know you said it's hypothetical, but that is not the situation here. The commission looked at the Mid-America cancellation tariff and said, based on this Court's decision and based on the statute of the language of the ICA, we don't have jurisdiction over complete cancellations of service. Then it went on to say, INEOS wants us to look at this as a whole. Let's do that. Even if we did have jurisdiction, we don't believe there's any reason to conduct an investigation here, because the tariff doesn't change any configuration of the system at all. It's open to all comers, and we really don't see how this affects INEOS's competitive position. In a nutshell, if the commission has absolute discretion whether to conduct an investigation, it can't abuse absolute discretion. I believe that's correct. Correct. So do you have any sense of what was meant when we talked about an exception? In Resolute? Yeah. Well, Resolute talks about two, and one's not really an issue here because it relates to suspensions. And there, there's a statutory obligation to give reasons. And even there, I'll note, the court said, well, look at the reasons to make sure they're there. But in the Exxon pipeline case, they said, we're not going to get into the merits of it. We're just going to make sure it's there. So I think in this case, where we have unreviewable discretion, to suggest that it's appropriate to get into the merits isn't appropriate. The other, again, the other exception noted in Resolute Natural Resources is if whatever action is at issue, if the commission didn't have authority to take it. If it was beyond its jurisdiction, if the action the commission took was beyond its statutory authority. So if it had no authority to accept without conducting an investigation. Yeah. I mean, maybe if it was an interstate pipeline and somehow the commission accepted it and didn't otherwise, maybe. But as I said, I believe there are standing issues here and also the dueling petitions for review. But unless the court has any particular questions, I'll stop here. Thank you. I think where I'd start is what we talked about before. By saying that they don't have jurisdiction and the commission found it without jurisdiction, then that's not an exercise of discretion. They didn't even get to that question. They did. And we'll talk about it in a second, their alternative argument. But the first statement of we lack jurisdiction can't be an exercise of discretion. And they couldn't have exercised their discretion to decline to review because they found no jurisdiction. That's the preliminary question. That's the thing that we'd ask this court to review and to say they were wrong. And again, what we heard here from my colleague was to say we don't have jurisdiction because it's not a complete cancellation. But that is to assume the question we've asked them to consider, which is that it's not a complete cancellation because of the fact that they should pierce the corporate bail. And for all the red flags that we talked about before. But moving to the second question, again, I don't think that they've given enough of a reason and explanation to say that everything's the same. Could I just be clear on the record? Yes. The only red flag I heard you mention was timing. There's also the extremely close. This isn't just sending it to another division of the company. It's under the exact same control as it was before. The same person. So timing, same control. Anything else? Red flags. Yes. It's there. As everybody keeps saying, there's no functional difference. It's being operated exactly as the same as it was before. The same people are making decisions about both of these pipelines as we're making them before. That's not a complete abandonment. All the cases here that they've cited that talk about complete abandonment is when they're getting out of the business of carrying product. That's not what happened here. They didn't get out of the business of carrying the product. The same company is doing the same thing they were doing before. The other thing I'd point out is that even the commission recognizes there is an adverse impact here. This is at Joint Appendix 169. While it may be the case that INEOS will be subject to some adverse economic effects due to its lack of access to the south at the origin point, the fact is no shipper can reserve service on the canceled points. It says, in any event, we're not getting there because we don't have jurisdiction. The jurisdiction question is fundamental to this. I think that while they do come back later and say, even if we had jurisdiction, we wouldn't exercise it, for the reasons we talked about in our brief and I talked about in my opening, they just haven't given enough of an explanation, a reasoned justification for their failure to exercise that jurisdiction. But the fact is, the first question, the first thing, and we understand this may be a matter of sending it back down on this jurisdiction question, and that may be as far as it goes, but they have to do that. They need to exercise that jurisdiction. The harm we face is that they are not doing what Section 3.1 says they're supposed to do. And I think that brings it, at least to some extent, in the exception identified in the resolute case. By refusing to exercise jurisdiction here, they are violating their statutory command to avoid and to stop any sort of prejudice whatsoever. That's the language in the statute and that's the language they should be enforcing. Undue prejudice. I'm sorry? Undue prejudice. But they didn't even get to that. No, no, no, no, no, no, but I'm just saying, I'm talking about the language in the statute. Undue prejudice. Undue prejudice whatsoever. But by refusing to exercise their jurisdiction, they have acted outside the statutory command that they're supposed to prevent that from happening. Thank you. Thank you. Case under advisement.
judges: Rogers, Wilkins, Randolph